UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

BAKER COLLEGE and BAKER
COLLEGE AND SUBSIDIARIES
HEALTH INSURANCE PLAN,

      Plaintiffs,

v.

BLUE CROSS AND BLUE
SHIELD OF MICHIGAN,

      Defendant.

CASE NO.:

Hon.

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiffs, Baker College ("Baker") and Baker College and Subsidiaries Health Insurance Plan ("Plan"), by and through their counsel, Varnum LLP, hereby state as their Complaint against Defendant, Blue Cross and Blue Shield of Michigan ("BCBSM") as follows:

## NATURE OF ACTION

1.     Baker entrusted BCBSM to administer its self-insured employee benefit Plan. Pursuant to their contract, Baker wired large sums of money to BCBSM, which BCBSM was supposed to use to pay employee health care claims. Baker recently learned that, contrary to their contract, BCBSM was also skimming an additional administrative fee from the money Baker provided to pay claims. BCBSM's misappropriation of Plan

assets is a clear violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*, as well as Michigan statutes and common law. Plaintiffs bring this suit to recover the misappropriated funds and all other relief to which they are entitled.

## PARTIES, JURISDICTION AND VENUE

2.    Baker is a Michigan corporation, with its principal place of business in Flint, Michigan.

3.    Baker College and Subsidiaries Health Insurance Plan is Baker's ERISA-governed benefit plan. Baker and the Plan are hereafter collectively referred to as "Plaintiffs."

4.    BCBSM is a Michigan non-profit health care corporation organized under the Nonprofit Health Care Corporation Reform Act, MCL 550.1101, *et seq* (the "Act").

5.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132 because Plaintiffs' claims arise under ERISA. This Court also has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

6.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because BCBSM resides in the Eastern District of Michigan. Venue is also proper pursuant to 29 U.S.C. § 1132(e)(2).

## <u>GENERAL ALLEGATIONS</u>

7.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs.

8.     Baker is headquartered in Flint, Michigan and is a private, non-profit higher educational institution.   Baker employs approximately 980 employees who are covered by the Plan.

9.     Baker offers health care benefits through the Plan.  Rather than buy health insurance to cover employee health care claims under the Plan, Baker has opted to self-insure.  As such, Baker pays the actual employee health care costs covered by the Plan, up to a large threshold.  Baker buys "stop loss" insurance to cover claims that exceed that threshold.

**A.     <u>Baker Contracted with BCBSM to Administer Its Self-Insured Plan.</u>**

10.     The framework for the relationship between Baker and BCBSM is contained in the Administrative Services Contract ("ASC").  The ASC is a boilerplate document drafted by BCBSM and sets forth the rights and responsibilities of each party with regard to BCBSM's administration of the Plan.

11.     Baker and BCBSM executed an ASC effective March 1, 1995. *See* **Exhibit 1**.

3

12.     Pursuant to the 1995 ASC, BCBSM agreed to administer Baker's Plan by paying covered employee health care claims on behalf of Baker, using money provided to it by Baker.

13.     The obligations of the parties were outlined in the ASC: "BCBSM will process and pay, and [Baker] … will reimburse BCBSM for all Amounts Billed related to Enrollees' claims.…" *Id*. at 3.

14.     "Amounts Billed" is defined in the ASC as "the amount [Baker] … owes in accordance with BCBSM's standard operating procedures for payment of Enrollees' claims." *Id*. at 1.

15.     "Enrollees" are defined in the ASC as "Employees and dependents of Employees who are eligible and enrolled for Coverage." *Id*. at 2.

16.     In exchange for its services, BCBSM was entitled to an administrative fee.

17.     The ASC does not contain any pricing terms.  Rather, the specific fees to be paid by Baker in exchange for the administrative services provided by BCBSM were enumerated in a "Schedule A," which was part of the ASC.  Together, the ASC and Schedule A formed the parties' contract.

18.     The ASC was renewed year after year by the parties through 2012.  An exemplar Schedule A is attached as **Exhibit 2**.

**B.   Baker Provided BCBSM With Plan Assets, Which Were Controlled by BCBSM and Supposed to be Used to Pay Covered Employee Claims.**

19.   Under the ASC, Baker was required to prepay the pro rata cost of estimated Amounts Billed for that quarter, the pro rata cost of the estimated administrative charge for that contract year and the amount BCBSM determined was necessary to maintain the prospective hospital reimbursement funding for that contract year.  *See* Exhibit 1 at 8.

20.   The specific prepay amounts to be paid by Baker were dictated by the Schedule A's.

21.   Under the ASC, BCBSM was required to provide Baker with "a detailed settlement showing Amounts Billed to and owed by [Baker] . . . during the prior available Quarter including any deficit amounts."  *See* Exhibit 1 at 8.

22.   The quarterly settlements were used to adjust the future prepay amounts upward or downward depending on whether employee health care claims were higher or lower than what Baker had previously prepaid.

23.   Pursuant to the terms of the ASC, as renewed, Baker wired the required prepayments to a BCBSM-owned bank account, on a periodic basis through 2012.

5

24.     The prepayments wired to BCBSM's bank account were "Plan Assets" as defined by ERISA.

25.     BCBSM had complete authority and control over the bank account and the Plan Assets wired to it by Baker.

26.     BCBSM (1) exercised discretionary authority and control with respect to management of the Plan; (2) exercised authority and control with respect to management and disposition of Plan Assets; or (3) had discretionary authority and responsibility in the administration of the Plan.

## C.     BCBSM Illegally Skimmed Additional Administrative Compensation From the Plan Assets Entrusted to It.

27.     Baker has recently learned that starting in 1994, BCBSM implemented a scheme to secretly obtain more administrative compensation than it was entitled to.

28.     The scheme is outlined in an internal BCBSM memo that Baker obtained from other litigation pending against BCBSM related to the illegal overcharges.  *See* **Exhibit 3**.

29.     According to the memo, BCBSM's plan was to lower its disclosed administrative fee to give the illusion of lower cost, while at the same time artificially inflating the amounts it reported as hospital claims cost.  BCBSM then kept the difference between what it was actually paying

hospitals for employee claims and what it reported it was paying for hospital claims.

30.    As an example, the scheme worked as follows:  If BCBSM was required to pay a hospital $6,000 for a covered employee claim, it would report a charge of $6,810 ($6,000 claim plus a 13.5% add on), instead of passing on the actual $6,000 to the customer (as required by the ASC and Schedule A's).   BCBSM would keep the additional $810 for itself as administrative compensation.

31.    Based on information provided by BCBSM, Baker believes BCBSM skimmed Plan Assets equal to a variable percentage of all Peer 1-4 hospital charges incurred by Baker employees.  The actual amount, however, is unknown to Baker and that information is solely in the control of BCBSM.

32.    According to BCBSM's memo, the new "pricing methodology" was done because under its then-current practice, certain fees were reported as "an add-on to the bill, highlighted for all to see" and "many customers have complained and have threatened to leave" BCBSM as a result.  *See* Exhibit 3 at 1.

33.    As explained by BCBSM, by hiding the additional administrative compensation in the claims cost it became "no longer visible

to the customer." (Emphasis added). This in turn, resulted in the disclosed "administrative costs charged to customers . . . lin[ing] up better with competitor fees," thereby creating the illusion of a more competitive price. *See* Exhibit 3 at 2.

34.    In addition, Plaintiffs have learned that BCBSM may have also charged it other hidden fees, including "subsidies" and "surcharges." Plaintiffs have further learned that BCBSM may have over-stated physician/professional claims as part of a program known as the Physicians Group Incentive Program. All of the above-described fees, subsidies and surcharges are hereafter collectively referred to as "Hidden Fees."

35.    Plaintiffs now believe that BCBSM charged them Hidden Fees since the initial ASC arrangement. In fact, Baker has obtained a letter recently written by BCBSM wherein BCBSM admitted that the Hidden Fees "have been in place for Local ASC groups since 1994." *See* **Exhibit 4**. Plaintiffs seek recovery of all Hidden Fees ever charged by BCBSM.

**D.    BCBSM Violated the ASC and Schedule A's by Charging the Hidden Fees.**

36.    Plaintiffs never agreed to pay the Hidden Fees.

37.    The Schedule A's do not identify the Hidden Fees. Just the opposite, the Schedule A's have a specific line item entitled "Administrative

Charge" and the specific dollar amount for that charge is identified and agreed to in the Schedule A's (and does not include Hidden Fees).  *See* Exhibit 2.

38.    For example, the 2002 Schedule A provides for an administrative charge of $31.73 per covered employee, per month.  No additional administrative charge is disclosed or agreed to.  *See* Exhibit 2.

39.    Nothing in the Schedule A's indicated that Plaintiffs agreed to pay the Hidden Fees.  In fact, BCBSM's charging of Hidden Fees was inconsistent with the ASC, which specifically identified Baker' payment obligations, none of which included paying the Hidden Fees.

**E.    BCBSM Produced False and Misleading Settlement Statements and Form 5500's.**

40.    The 1995 ASC required BCBSM to provide Baker with a detailed settlement showing the Amounts Billed to and owed by Baker and a settlement of the estimated and the actual administrative charges.

41.    BCBSM provided quarterly and annual settlements, neither of which properly reported the Hidden Fees.

42.    The format of the annual settlements varied slightly over the years, but in general they included reporting of "administrative fees."  A copy of an exemplar annual settlement is attached as **Exhibit 5**.

9

43.    The annual settlements provided by BCBSM to Baker were false and misleading.

44.    While the annual settlements purported to disclose the administrative fees paid by Baker, the only administrative fees reported were the administrative fees specifically disclosed in the Schedule A's.  The Hidden Fees were not disclosed.

45.    In its April 29, 2011 letter, BCBSM acknowledged that the Hidden Fees were "administrative compensation" but did not explain why those fees were not reported in the settlements.  *See* Exhibit 4.

46.    The settlements also purported to disclose "actual claims paid by BCBSM," but this number was also false.  BCBSM actually paid claims in a smaller amount and kept the difference for itself ("Hidden Fees").

47.    BCBSM also provided Baker with quarterly settlements, which purported to report "Total Claims Expense" and "Total Administrative Fee Expense."

48.    The quarterly settlements were false because they overstated the actual claims and understated the administrative compensation received by BCBSM.

49.    Included with the annual settlements was a "Form 5500" certification.  *See* Exhibit 5**.**

50.    The Form 5500 is a form developed by the Department of Labor, Internal Revenue Service and Pension Benefit and Guaranty Corporation and is required to be filed by certain employers as part of their obligations under Title I and Title IV of ERISA, as well as under the Internal Revenue Code.

51.    The Form 5500 required disclosure of total "claims paid."  The amount reported as claims paid by BCBSM included both the actual claims paid to health care service providers and the Hidden Fees that BCBSM skimmed for itself as additional administrative compensation.

52.    Thus, the Form 5500 certifications provided by BCBSM were false in that they overstated the actual amount of claims paid.

53.    The Form 5500 certifications also required disclosure of all commissions, administration fees, and other compensation or retention received by BCBSM.

54.    Under the category "Administration," BCBSM only reported the disclosed administrative fees, not the Hidden Fees.

55.    Under the category "Total Retention," BCBSM was required to report the total monies it received for administering the Plan, but again only reported disclosed administrative fees, not the Hidden Fees that it also received.

56.    Thus, the Form 5500 certifications as submitted by BCBSM were false because they understated the administrative compensation received by BCBSM.

57.    The Form 5500's may have also been false because BCBSM failed to report all commissions paid.

58.    BCBSM's strategy of secrecy worked as planned and Baker was unaware until 2013 that it had been charged Hidden Fees.

**F.    BCBSM Fraudulently Concealed the Hidden Fees.**

59.    As established by BCBSM's own internal memo, BCBSM engaged in a course of conduct intentionally designed to conceal evidence of its wrongdoing.

60.    The Hidden Fees were not disclosed, much less agreed to, in the ACS or Schedule A's.

61.    In addition, BCBSM repeatedly produced false settlement statements that (1) did not disclose the Hidden Fees at all and (2) understated the amount of administrative compensation it was receiving.

62.    In furtherance of its secret scheme, BCBSM also issued a detailed training manual for its sales representatives entitled "Talking Points, Conversations with Customers, ASC Access Fee" in 2006.  *See* **Exhibit 6**.

63.   The training manual, which stated at the bottom of each page that it was "for BCBSM sales representative use only," started with an explanation of what the Hidden Fees were and how they were calculated. Apparently, the Hidden Fees were so secretive, not even BCBSM's own sales representatives knew anything about them.

64.   The thrust of the training manual was a section called "how to present the ASC access fee" which counseled BCBSM sales representatives to only discuss the fee as "part of the larger conversation you have with your customers" and that the "access fee should not be the focal point of your discussions."  *See* Exhibit 6 at 7.

65.   Indeed, rather than allowing the BCBSM sales representatives to simply disclose the access fees in a clear and unambiguous fashion, the training manual "strongly recommend[s] that you meet with your underwriters to develop an individual strategy for each of your groups."  *See* Exhibit 6 at 7.

66.   Thus, BCBSM's own training manual further shows its intentional concealment of the Hidden Fees.

67.   Starting as early as 2004, a small, but vocal, contingent of BCBSM executives began raising concerns about the Hidden Fees and advocated for full disclosure.   Internal discussions regarding whether to

disclose the fees at all, and if so, the most innocuous way to do that continued for years.

68.    Eventually, the executives who were advocating for "full disclosure" lost – BCBSM decided the fees would not be fully disclosed as an administrative cost on the contracts.   Several of the executives who advocated for this position were terminated.

69.    Over the course of the next several years, BCBSM management routinely discussed the Hidden Fees.  Plaintiffs' counsel has possession of emails and other communications from discovery in companion litigation – *Hi-Lex Controls Inc. v. Blue Cross and Blue Shield of Michigan*, Case No. 11-cv-12557 (E.D. Mich.).  These documents reveal (1) BCBSM knew that its customers did not understand they were paying Hidden Fees, (2) BCBSM was not interested in correcting those misunderstandings, and (3) if the Hidden Fee topic ever came up in discussions with customers, the fees were to be "down-played" and otherwise avoided by BCBSM sales representatives.

70.    An extensive factual record of BCBSM's wrong doing has been developed in the *Hi-Lex* case.  In fact, that case went to trial in April 2013, and resulted in judgment in favor of the *Hi-Lex* Plaintiffs.  The Court issued extensive findings of fact, which, amount other things, including findings

that BCBSM intentionally concealed the Hidden Fees, acted in bad faith, and otherwise breached its fiduciary duties.  See Docket No. 246 in *Hi-Lex*.

71.     The Court's Findings of Fact and Conclusions of Law from *Hi-Lex* are hereby incorporated by reference and BCBSM is now collaterally estopped from contesting these dispositive factual findings in this case.

72.     Baker was not on actual or constructive notice that BCBSM was charging the Hidden Fees, despite the exercise of reasonable diligence on its part.

### G.     The Hidden Fees Include an Illegal Cost Transfer Subsidy.

73.     The Hidden Fees are comprised of a number of different fees, including what is known as the Other Than Group Subsidy ("OTG Subsidy").

74.     The OTG Subsidy is a cost transfer subsidy.

75.     BCBSM collected the OTG Subsidy from Baker and other ASC customers.

76.     Not all ASC customers, however, were required to pay the OTG Subsidy, and BCBSM did not uniformly collect it.

77.     BCBSM used the OTG Subsidy to subsidize healthcare coverage for non-group clients who had no affiliation with Baker.

78.   This Court has already held that BCBSM's collection of the OTG Subsidy from ASC customers violated Michigan law and accordingly was a breach of BCBSM's fiduciary duties to its ASC customers under ERISA. *See Pipefitters Local 636 v. Blue Cross & Blue Shield of Mich.*, No. 04-73400, 2009 U.S. Dist. LEXIS 79509  (E.D. Mich., Sept. 3, 2009), as well as this Court's May 23, 2013, Findings of Fact and Conclusions of Law in the *Hi-lex* case [Hi-lex Dkt. No. 246].

## COUNT I
## BREACH OF FIDUCIARY DUTY – ERISA

79.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs.

80.   BCBSM was a fiduciary pursuant to 29 U.S.C. § 1002(21)(A) with respect to the Plan because (1) it exercised discretionary authority and control over management of the Plan; (2) it exercised authority and control over management and disposition of Plan Assets; or (3) it had discretionary authority and responsibility in the administration of the Plan.

81.   Baker is a fiduciary because it exercises discretionary authority and control over management of the Plan.

82.   As a fiduciary, BCBSM was required to, among other things, discharge its duties solely in the interest of the employees and beneficiaries of the Plan, preserve Plan Assets, fully disclose its actions and any

compensation it was taking for its services, avoid making false or misleading statements, and abide by any statutory obligations or restrictions imposed on it.

83.     BCBSM breached its fiduciary duties by, among other things:

(a)     Charging the Hidden Fees;

(b)     Failing to disclose the Hidden Fees;

(c)     Submitting false and misleading quarterly settlement statements and annual summaries;

(d)     Submitting false and misleading Form 5500 reports;

(e)     Violating the Act;

(f)     Violating the Health Care False Claims Act; and

(g)     Otherwise engaging in a pattern of conduct designed to mislead, confuse, deceive and otherwise trick Plaintiffs into paying more for its services than Plaintiffs were obligated to pay.

84.     BCBSM's breach of its fiduciary duty has proximately caused substantial damages to Plaintiffs.

85.     BCBSM fraudulently concealed that it was charging the Hidden Fees, the amount of those fees, and that it was otherwise violating its legal obligations to Plaintiffs.

86.     Plaintiffs did not discover the full extent of BCBSM's wrongful conduct until 2013.

## COUNT II
## PROHIBITED TRANSACTION UNDER ERISA

87.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs.

88.     BCBSM is a fiduciary pursuant to 29 U.S.C. § 1002(21)(A) and a "party in interest" pursuant to 29 U.S.C. § 1002(14).

89.     As a fiduciary and party in interest, BCBSM was prohibited from engaging in certain transactions as set forth in 29 U.S.C. § 1106.

90.     BCBSM's conduct with respect to the Hidden Fees was a prohibited transaction because, among other things, (a) it constituted a transfer to, or use by or for the benefit of, BCBSM of Plan Assets, and (b) BCBSM dealt with Plan Assets in its own interest and for its own account.

91.     BCBSM's violation of 29 U.S.C. § 1106 has proximately caused substantial damages to Plaintiffs.

92.     BCBSM fraudulently concealed that it was charging the Hidden Fees, the amount of those fees, and that it was otherwise violating its legal obligations to Plaintiffs.

93.     Plaintiffs did not discover the full extent of BCBSM's wrongful conduct until 2013.

## COUNT III
## VIOLATION OF THE ACT

94.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs.

95.     This Count is alleged to preserve all of Plaintiffs' claims.

96.     Plaintiffs expect the parties will submit an order for the Court's consideration, approved as to form only, which is consistent with the Court's prior rulings on similar state law claims in the related cases.

97.     BCBSM is a non-profit health care corporation governed by the Act.

98.     Pursuant to the Act, BCBSM was required to comply with the following section of the Act:

> (2) Relative to actual administrative costs, fees for administrative services only and cost-plus arrangements shall be set in a manner that precludes cost transfers between subscribers subject to either of these arrangements and other subscribers of the health care corporation. Administrative costs for these arrangements shall be determined in accordance with the administrative costs allocation methodology and definitions filed and approved under part 6, and shall be expressed clearly and accurately in the contracts establishing the arrangements, as a percentage of costs rather than charges.

MCL 550.1211(2).

99.     The Act also prohibited BCBSM from distributing inaccurate or misleading statements concerning its services:

(2)   In order to induce a person to contract or to continue to contract with the health care corporation for the provision of health care benefits or administrative or other services offered by the corporation; to induce a person to lapse, forfeit, or surrender a certificate issued by the health care corporation; or to induce a person to secure or terminate coverage with another health care corporation, insurer, health maintenance organization, or other person, a health care corporation shall not, directly or indirectly:

(d)   Make, issue, or circulate, or cause to be made, issued, or circulated, any estimate, illustration, circular, or statement misrepresenting the terms of a certificate or contract for administrative or other services, the benefits thereunder, or the true nature thereof.

MCL 550.1402(2)(d).

100.   BCBSM, through its conduct alleged in this Complaint, violated its statutory obligations under the Act.

101.   BCBSM's statutory violations have proximately caused substantial damages to Plaintiffs.

102.   Baker brings this count on behalf of itself and other aggrieved members.

103.   BCBSM fraudulently concealed the foregoing wrongful conduct.

104.   Plaintiffs did not discover the full extent of BCBSM's violations of the Act until 2013.

## COUNT IV

## HEALTH CARE FALSE CLAIMS ACT

105.  Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs.

106.  This Count is alleged to preserve all of Plaintiffs' claims.

107.  Plaintiffs expect the parties will submit an order for the Court's consideration, approved as to form only, which is consistent with the Court's prior rulings on similar state law claims in the related cases.

108.  Baker is a health care insurer as defined by MCL 752.1009.

109.  Baker reimbursed BCBSM for health care services it paid on behalf of Baker' employees.

110.  The amount charged by BCBSM for paying the claims was false because the actual claims were less than the amount charged by BCBSM.

111.  BCBSM kept the difference between what it charged to Baker as claims cost and what it actually paid in claims, for itself.

112.  In doing so, BCBSM knowingly presented or caused to be presented claims which contained one or more false statements in violation of MCL 752.1009.

113.  BCBSM is therefore liable to Baker for the full amount of the payments made pursuant to MCL 752.1009.

114.   BCBSM   fraudulently   concealed   the   foregoing   wrongful conduct.

115.   Baker did not discover the full extent of BCBSM's violation of MCL 752.1009 until 2013.

## COUNT V
## BREACH OF CONTRACT, AND ALTERNATIVELY, COVENANT OF GOOD FAITH AND FAIR DEALING

116.   Plaintiffs   hereby   incorporate   by   reference   the   allegations contained in the preceding paragraphs.

117.   This Count is alleged to preserve all of Plaintiffs' claims.

118.   Plaintiffs expect the parties will submit an order for the Court's consideration, approved as to form only, which is consistent with the Court's prior rulings on similar state law claims in the related cases.

119.   The ASC and Schedule A's are enforceable, binding contracts between Baker and BCBSM.  The Plan is an intended third-party beneficiary of the contracts.

120.   BCBSM breached the contracts by (1) charging Hidden Fees not allowed under the ASC and Schedule A's, (2) not reporting or otherwise disclosing the actual claims paid and administrative compensation it received, and (3) submitting false and misleading quarterly and annual settlement statements.

121.   BCBSM's breach of the contracts has proximately caused substantial damages to Plaintiffs.

122.   Alternatively, to the extent the Court finds the contracts allowed BCBSM to charge Hidden Fees, the amount charged by BCBSM is not set forth in the contracts and was instead unilaterally determined by BCBSM without disclosure to, or agreement with, Plaintiffs.

123.   To the extent the contracts allowed BCBSM to exercise its discretion as to the amount of the Hidden Fees, BCBSM had a duty to exercise that discretion in good faith and in a manner which dealt fairly with Plaintiffs and was consistent with the parties' objective, reasonable expectations.

124.   BCBSM breached its duty of good faith and fair dealing by, among other things:

    (a)   Charging Hidden Fees unilaterally, secretly, and in bad faith,

    (b)   Setting an arbitrary and excessive fee,

    (c)   Failing to disclose or report the Hidden Fees,

    (d)   Submitting false and misleading quarterly settlements, annual settlements, and Form 5500's,

    (e)   Violating Michigan and federal law, and

(f)     Otherwise acting in a manner that was in its best interests alone and not fair to Plaintiffs.

125.   BCBSM fraudulently concealed its breach of contract and breach of the duty of good faith and fair dealing from Plaintiffs.

126.   Plaintiffs did not discover the full extent of BCBSM's breach of contract and breach of duty of good faith and fair dealing until 2013.

## COUNT VI
## BREACH OF COMMON LAW FIDUCIARY DUTY

127.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs.

128.   This Count is alleged to preserve all of Plaintiffs' claims.

129.   Plaintiffs expect the parties will submit an order for the Court's consideration, approved as to form only, which is consistent with the Court's prior rulings on similar state law claims in the related cases.

130.   BCBSM was in a fiduciary relationship with Baker because, among other things, it was reposed with trust and confidence by Baker under the ASC and was also entrusted with monies provided to it by Baker.

131.   As a fiduciary, BCBSM was required to, among other things, conduct itself in the best interests of Baker, as well as the employees and beneficiaries of the Plan, and fully disclose its actions and any compensation it was taking for its administrative services.

132.   BCBSM breached its fiduciary duty by, among other things:

(a)   Charging the Hidden Fees;

(b)   Failing to disclose the Hidden Fees;

(c)   Submitting false and misleading quarterly and annual settlement statements;

(d)   Submitting false and misleading Form 5500's;

(e)   Violating the Act;

(f)   Violating the Health Care False Claims Act; and

(g)   Otherwise engaging in a pattern of conduct designed to mislead, confuse, deceive and otherwise trick Baker into paying more for its services than Baker agreed to pay.

133.   As a proximate result of BCBSM's wrongful conduct, Baker has incurred substantial damages.

134.   BCBSM fraudulently concealed the foregoing wrongful conduct.

135.   Baker did not discover the full extent of BCBSM's breach of fiduciary duty until 2013.

### COUNT VII
### CONVERSION

136.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs.

137.   This Count is alleged to preserve all of Plaintiffs' claims.

138.   Plaintiffs expect the parties will submit an order for the Court's consideration, approved as to form only, which is consistent with the Court's prior rulings on similar state law claims in the related cases.

139.   As set forth above, BCBSM was in a position of trust and confidence with respect to Baker and Plan Assets.

140.   Baker delivered specific monetary funds to BCBSM, which were to be used to pay appropriate employee health care claims.

141.   BCBSM had an obligation to return funds not used to pay employee health care claims or other obligations properly due under the ASC and Schedule A's.

142.   BCBSM used its position of trust and confidence to wrongfully divert some of the funds to its own use, inapposite of its contractual and fiduciary obligations.

143.   BCBSM's charging of Hidden Fees, as well as its retention of those fees and refusal to return them, constitutes wrongful dominion and control over property of Baker.

144.   BCBSM's has refused to return all funds obtained by it as Hidden Fees.

145.  As a proximate result of BCBSM's acts, Baker has incurred substantial damages.  In addition, Baker is entitled to treble damages pursuant to MCL 600.2919a, as well as interest, costs and attorneys' fees.

146.  BCBSM fraudulently concealed the fact that it converted Plan Assets to its own use.

147.  Baker did not discover the full extent of BCBSM's conversion until 2013.

## COUNT VIII
## FRAUD / MISREPRESENTATION

148.  Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs.

149.  This Count is alleged to preserve all of Plaintiffs' claims.

150.  Plaintiffs expect the parties will submit an order for the Court's consideration, approved as to form only, which is consistent with the Court's prior rulings on similar state law claims in the related cases.

151.  BCBSM made material representations of fact to Baker, namely that it was charging a smaller administrative service fee than it was charging and that it was using Plan Assets to pay claims when it fact it was using a portion of those assets to pay Hidden Fees.

152.  The representations made by BCBSM were false when made.

27

153.   BCBSM knew that its representations were false when made, or at the very least, it made those representations recklessly.

154.   Alternatively, even if BCBSM did not knowingly or recklessly make the representations, it is nonetheless liable for innocent misrepresentation because BCBSM benefited from the false representations.

155.   BCBSM made the representations with the intention of inducing Baker' reliance and, in fact, Baker did reasonably rely upon the representations made by BCBSM.

156.   Baker has suffered substantial damages as a result of the misrepresentations made by BCBSM.

157.   BCBSM fraudulently concealed the foregoing wrongful conduct.

158.   Baker did not discover the full extent of BCBSM's fraud/misrepresentation until 2013.

## COUNT IX
## SILENT FRAUD

159.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs.

160.   This Count is alleged to preserve all of Plaintiffs' claims.

161.   Plaintiffs expect the parties will submit an order for the Court's consideration, approved as to form only, which is consistent with the Court's prior rulings on similar state law claims in the related cases.

162.   BCBSM was in a fiduciary relationship with Baker, and as such, had a duty of loyalty and honesty and was otherwise obligated to disclose any and all material facts regarding the self-insured program the parties were contracting for.

163.   BCBSM charged Baker Hidden Fees by skimming for itself Plan Assets that were supposed to be used to pay claims.

164.   BCBSM had an affirmative duty to disclose that (1) it was charging Hidden Fees, (2) the methodology for determining those fees, and (3) the amount of those fees.

165.   BCBSM did not disclose the foregoing, despite its duty to do so.

166.   BCBSM intended to induce Baker to rely upon the nondisclosure (that there were no additional administrative fees), and in fact, Baker did rely upon that nondisclosure.

167.   Baker suffered substantial damages as a result of BCBSM's failure to disclose the facts and circumstances surrounding the Hidden Fees.

168.   BCBSM   fraudulently   concealed   the   foregoing   wrongful conduct.

169.   Baker did not discover the full extent of BCBSM's fraud until 2013.

## **PRAYER FOR RELIEF**

Plaintiffs respectfully request that the Court to enter judgment in their favor and against BCBSM as follows:

A.   Ordering BCBSM to provide a full and complete accounting of all Hidden Fees received by it from Plaintiffs;

B.   Declaring that BCBSM breached its fiduciary duty and otherwise violated Michigan and federal law by (1) charging the Hidden Fees, (2) failing to disclose or report the Hidden Fees, and (3) submitting false and misleading quarterly settlements, annual settlements and Form 5500's, and otherwise acting through a pattern of deception;

C.   Awarding restitution to Plaintiffs of the Hidden Fees;

D.   Awarding treble damages and attorneys' fees pursuant to MCL 600.2919a.

E.   Awarding monetary damages in the full amount of claims submitted by BCBSM to Plaintiffs pursuant to MCL 752.1009.

F.  Awarding monetary damages, costs, interest and attorneys' fees (including statutory attorneys' fees under ERISA) to the fullest extent of the law; and

G.  Awarding all other relief to which Plaintiffs may be entitled.

VARNUM LLP
Attorneys for Plaintiffs

Date: July 26, 2013                By:  */s/ Perrin Rynders*
                                   Perrin Rynders (P38221)
                                   Aaron M. Phelps (P64790)
                                   Business Address & Telephone:
                                   Bridgewater Place, PO Box 352
                                   Grand Rapids, MI, 49501-0352
                                   Phone:  (616) 336-6000
                                   Fax:  (616) 336-7000
                                   prynders@varnumlaw.com
                                   amphelps@varnumlaw.com

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all issues so triable.

VARNUM LLP
Attorneys for Plaintiffs

Date: July 26, 2013          By:   */s/ Perrin Rynders*  _____
                            Perrin Rynders (P38221)
                            Aaron M. Phelps (P64790)
                      Business Address & Telephone:
                            Bridgewater Place, PO Box 352
                            Grand Rapids, MI, 49501-0352
                            Phone:  (616) 336-6000
                            Fax:  (616) 336-7000
                            prynders@varnumlaw.com
                            amphelps@varnumlaw.com

6224899_1.doc